IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

———————

EMERSON MARTINEZ, et al.,

    Plaintiffs,

v.                                                    Civ. No. 96-1219 BB/WWD

THOMAS MUMFORD, et al.,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' October 23, 1997 motion for partial summary judgment (Doc. 27) based on whether Gallup police officers violated Decedent's constitutional rights under the Fourth and Fourteenth Amendments to be free from seizure and excessive force. The Court has reviewed the submissions of the parties and the relevant law and, for the reasons set forth below, finds that Defendants' motion should be GRANTED IN PART and DENIED IN PART.

**I.    Facts and Summary Judgment**

Before reciting the facts, the Court notes that "Summary judgment is proper only if the pleading, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party. Id. The following facts are stated accordingly.

In Gallup, New Mexico on January 5, 1996, three youths, Erickson Martinez, Eric Spencer

and Fernando Nez were passengers in a pickup driven by another youth, Layne Martine.  At approximately 11:25 p.m., Gallup Police Officer John Montjoy and McKinley County Sheriff's Investigator George Justice noticed the vehicle parked next to a van in the parking lot of Rio West Mall.  One of the passengers looked into the van, then saw the officers and quickly returned to the pickup.  The pickup then fled the scene and the officers followed and radioed for assistance because all the occupants were suspected of burglarizing the van. With two additional squad cars in pursuit, the pickup continued to flee, narrowly missed a semi-truck, then crashed into a low concrete wall. Nez exited the pickup and surrendered to police. Spencer also exited the pickup and began running north on Carver Street.  Officer Montjoy began to chase Spencer.  Gallup Police Officer Thomas Mumford, who had recently arrived at the scene, saw Montjoy chasing Spencer and also began running north on Carver Street.  From information he heard over the dispatch, he knew that possible traffic offenses had been committed but was not sure whether an actual crime had been committed.

     At approximately the same time, Martine, who was driving without a valid license or registration, backed the pickup away from the wall, and drove north on Carver Street, with Erickson Martinez as a passenger.  Another officer fired shots at the pickup in an apparent attempt to hit the tires. Both Officer Montjoy and Officer Mumford saw the vehicle as it approached them.  Martine saw the officer on his left and slowed the vehicle to avoid him.  Martine also maneuvered the pickup into the middle of Carver Street.  Officer Montjoy, near the center of the street, moved away from the vehicle and fired several shots.  Officer Mumford, located on the other side of the street, fired at the pickup as it passed him, then fired two more times directly into the cab. One of the bullets fired by Mumford struck Erickson Martinez and killed him. Another bullet struck Martine.

     Neither Mumford nor Montjoy could see into the vehicle because it contained tinted windows.

Mumford claims he fired at the pickup because he was concerned the pickup might run over Montjoy. However, Plaintiffs' expert, Lou Reiter, testified at deposition that neither officer could reasonably fear for his safety based on the pickup's movements on Carver Street. From other testimony by on-scene officers, the pickup's exact movements and location on Carver Street before the shooting remains an issue. Mumford fired the shots within a matter of several seconds and the whole incident took place within several minutes.

After the fatal shots, the pickup continued north on Carver Street, with other police cars in pursuit. The pickup then drove across a nearby field and on to highway SR-608. Soon after, it ran off the road and crashed into an arroyo. The driver, Martine, fled and was later arrested seeking medical treatment. Police discovered Martinez' body in the pickup.

On September 4, 1996, Plaintiffs, on behalf of their son, brought suit against Officer Mumford, individually and in his official capacity for use of excessive force, and the City of Gallup ("City") under 42 U.S.C. § 1983, for failure to train its police force. Plaintiffs also alleged state law claims under the New Mexico Wrongful Death Act and the New Mexico Tort Claims Act and that Defendants intentionally conspired to cover up their actions. At issue in Defendants' motion for partial summary judgment is whether a seizure occurred to support a claim of excessive force under the Fourth Amendment and whether Plaintiff's Fourteenth Amendment rights have been violated.

**II.     Analysis**

**A.     Defendants' motion for summary judgment under Fourteenth Amendment**

The Tenth Circuit recognizes a substantive due process component under the Fourteenth Amendment in claims involving excessive force under § 1983. See Latta v. Keryte, 118 F.3d 693, 702 (10th Cir. 1997) (assuming that excessive force claims arising outside the context of a seizure

3

still may be analyzed under substantive due process principles) (citing <u>Bella v. Chamberlain</u>, 24 F.3d 1251, 1257 (10th Cir. 1994)); <u>Diaz v. Salazar</u>, 924 F. Supp. 1088 (D.N.M. 1996) (J. Hansen); <u>Harper v. City of Albuquerque</u>, Civ. 96-1048 BB/WWD (D.N.M. filed Sep. 18, 1997) (Doc. 15).

"Under the due process standard, the factors relevant to whether the use of force is excessive are: (1) the relationship between the amount of the force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the . . . officer." <u>Hannula v. City of Lakewood</u>, 907 F.2d 129, 131-32 (10th Cir. 1990). However, the standard of conduct required for such a violation must "shock the conscience" and involve force inspired by malice or unwise, excessive zeal amounting to an abuse of official power. <u>Hewitt v. City of Truth or Consequences</u>, 758 F.2d 1375, 1379 (10th Cir. 1985). <u>See</u> <u>also</u> <u>Williams v. City of Denver</u>, 99 F.3d 1009, 1015 (10th Cir. 1996) (applying "shock the conscience" standard).

In this case, the facts alleged in the complaint, and supporting depositions and affidavits, fail to meet this high threshold. Officer Mumford's actions included firing at a fleeing vehicle in an effort to stop its movement in the area of a fellow officer. His actions under a Fourteenth Amendment analysis do not "shock the conscience." <u>See</u> <u>Bella</u>, 24 F.3d at 1258-59 (citing cases). The Court will therefore grant Defendants' motion for summary judgment on Plaintiffs' Fourteenth Amendment claims against the City and Officer Mumford.

**B.1.    Defendants' motion for summary judgment under Fourth Amendment/seizure**

Following a seizure, excessive force claims are analyzed under the Fourth Amendment. <u>Latta</u>, 118 F.3d at 701 (citing <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989)). A seizure occurs only when a citizen is physically touched by law enforcement officers or when he otherwise submits to a show of authority by the officers. <u>Schulz v. Long</u>, 44 F.3d 643, 646 (8th Cir. 1995) (citing <u>California v.</u>

Hodari D., 499 U.S. 621, 626 (1991)). An assertion of authority by a law enforcement officer without a corresponding submission by the citizen does not constitute a seizure within the meaning of the Fourth Amendment. Id. "Neither usage nor common-law tradition makes an attempted seizure a seizure." Id., (quoting Hodari D. at 626 n.2). One becomes seized when the officer's show of authority has the effect of stopping his movement. Id. Accidental detentions do not support a constitutional violation, a seizure must be willful to be actionable under the Fourth Amendment. Apodaca v. Rio Arriba County Sheriff's Dept., 905 F.2d 1445, 1447 (10th Cir. 1990) (citing Brower v. County of Inyo, 489 U.S. 593, 596 (1989)). An action may lie for one intentionally but wrongly seized. Id., (approving Jamieson v. Shaw, 772 F.2d 1205, 1209-10 (5th Cir. 1985) (holding passenger in car stopped by roadblock was seized because officers intended to stop car)).

Defendants argue that Martinez was not seized under the Fourth Amendment because Officer Mumford did not intend to shoot him and aimed only at the driver. Therefore, Defendants claim Decedent was accidentally shot and his remedy is in tort. The Court disagrees. The Tenth Circuit, in Apodaca, notes that a passenger is wrongfully seized when police intentionally stop the vehicle he is riding in. 905 F.2d at 1447. Further, in a claim alleging excessive force, recent Tenth Circuit precedent requires a review of pre-seizure conduct when the officer claims he acted to protect himself and his fellow officers. See Allen v. Muskogee, Okla., 119 F.3d 837, 840 (10th Cir. 1997) (excessive force inquiry also includes officers' actions in the moments leading up to the suspect's threat of force).

In the case at bar, there is no dispute that all four youths were suspects in a possible break in of a van. Officer Mumford clearly fired at the pickup in an effort to stop the pickup's movement, either by shooting the tires or hitting the driver. He alleges he shot in self defense (Plaintiffs refer to evidence which contradicts this assertion). A reasonable juror could thus find his objective intent was

to stop or seize the pickup and question the occupants about their role in a possible break in. There is no question his shots accomplished that goal--effectively stopping the vehicle and restricting the ability of Martine and Martinez to escape. Thus, the Court finds the pickup, the driver and Martinez were effectively seized when Mumford fired the fatal shots. For these reasons the Court will deny Defendants' motion on this issue and will determine whether summary judgment is appropriate under the Fourth Amendment.

**B.2. Defendants' motion for summary judgment under Fourth Amendment**

The Tenth Circuit analyzes a § 1983 claim of excessive force under the Fourth Amendment by determining whether the officers' actions were objectively reasonable in light of the surrounding facts and circumstances. Allen, 119 F.3d at 840 (citing Graham, 490 U.S. at 397). The excessive force inquiry includes not only the officers' actions at the moment that the threat was presented, but also may include their actions in the moments leading up to the suspect's threat of force. Id. An officer's conduct prior to the suspect's threat of force may be relevant to the reasonableness inquiry if the conduct is "immediately connected" to the suspect's threat of force. Romero v. Board of County Comm'rs, 60 F.3d 702, 704-05 (10th Cir. 1995). Under this approach, the actions of the remaining officers, from the initial detection and subsequent chase, were "immediately connected" to Mumford's alleged threat of force. The Court notes the entire incident took only a few minutes and the other officers' actions played a role in Mumford's decision to fire the fatal shots.

The use of force must be judged from the perspective of a reasonable officer "on the scene" who is "often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. "The reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and

on whether Defendants' own reckless or deliberate conduct during the seizure created the need to use such force." Allen, 119 F.3d at 840 (quoting Sevier v. City of Lawrence, Kan., 60 F.3d 695, 699 (10th Cir. 1995)). Thus, an objective reasonableness inquiry requires courts to examine "whether the totality of the circumstances justified a particular sort of search or seizure." Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

A number of critical facts relating to Officer Mumford's objective intent at the time he fired the fatal shots remain in dispute. Mumford alleges he was concerned about his safety and the safety of Officer Montjoy at the time he fired. However, Plaintiffs' expert, Lou Reiter, explained why that assertion is unreasonable based on his analysis of the locations of the parties at the time. He relies on testimony which indicates that both Mumford and Montjoy were safely away from the vehicle, and that the vehicle actually slowed to avoid them before the fatal shots were fired. A reasonable juror could thus conclude that Mumford's actions were not reasonable and the shots were intended to merely injure the vehicle's occupants. The Court will therefore deny Defendants' motion for summary judgment on Plaintiffs' claim of excessive force under the Fourth Amendment.

### III.   Conclusion

The Court will grant Defendants' October 23, 1997 motion for partial summary judgment on Plaintiffs' claims arising out of substantive due process under the Fourteenth Amendment. The Court will deny Defendants' motion for partial summary judgment on Plaintiffs' claim against Officer Mumford arising out of the use of excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983.

An order in accordance with this Memorandum Opinion will issue.

Dated at Albuquerque this 12th day of November, 1997.

_____
BRUCE D. BLACK
United States District Judge